1
2
3
4
5
6
7
8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JERRY WAYNE DAVIS,                          CASE NO. CV F 03-5935 LJO SMS

12                    Plaintiff,               **DECISION ON DEFENDANT'S SUMMARY
                                          **JUDGMENT MOTION**
13        vs.                             (Doc. 60.)

14   HANSFORD T. JOHNSON, Acting
     Secretary of the Department of the
15   Navy,

16                    Defendant.
                                        /
17

18                              **INTRODUCTION**

19        Defendant United States of America ("Government") seeks summary judgment on plaintiff Jerry

20   Wayne Davis' ("Mr. Davis'") employment discrimination claims on grounds, among others, that Mr.

21   Davis failed to pursue timely and to exhaust administratively his claims. Mr. Davis filed no timely

22   papers to oppose summary judgment. This Court considered the Government's summary judgment

23   motion on the record[1] and VACATES the May 21, 2007 hearing, pursuant to this Court's Local Rule

24   78-230(c), (h). For the reasons discussed below, this Court GRANTS the Government summary

25   judgment.

26   _____

27        [1]      In the absence of Mr. Davis' opposition, this Court carefully reviewed and considered the entire record to
     determined whether the Government's summary judgment motion is well supported. Omission of reference to an argument,
28   document or paper is not to be construed to the effect that this Court did not consider the argument, document or paper.

                                         1

1

**BACKGROUND**

2

**Mr. Davis' Navy Employment Termination And Withdrawn MSPB Appeal**

3       During 1986-2000, the U.S. Department of Navy ("Navy") employed Mr. Davis at China Lake,

4   California.[2]   On April 14, 2000, after two years of leave-without-pay status, the Navy removed Mr.

5   Davis' employment based on medical unavailability.  On May 15, 2000, Mr. Davis filed with the Merit

6   Systems Protection Board ("MSPB") an appeal of the Navy's decision to remove his employment to

7   claim that the Navy's action "was a pretext for disability, age and race discrimination" and that the Navy

8   "could have, but did not accommodate his medical condition."  On May 16, 2000, Mr. Davis received

9   MSPB's acknowledgment from MSPB Administrative Law Judge LuNell C. Anderson ("ALJ

10  Anderson") that MSPB had received Mr. Davis' appeal.

11      With his June 12, 2000 letter to ALJ Anderson, Mr. Davis requested "cancellation of my case"

12  based on the absence of an attorney to represent him and concluded: "I'm changing my mind and

13  withdrawing my case."  With his June 12 and 16, 2000 letters to his Equal Employment Opportunity

14  ("EEO") counselor Ferdie Carlos, Mr. Davis noted he is "pursuing EEO charges only" and is "no longer

15  pursuing MSPB or mix case."

16      With her June 20, 2000 decision, ALJ Anderson noted that after a June 19, 2000 telephone

17  conference with Mr. Davis and a Navy representative, Mr. Davis "confirmed" that he was not pursuing

18  and "wished to withdraw" his MSPB appeal.

19

**Mr. Davis' EEO Complaint**

20      On August 10, 2000, Mr. Davis filed with the Navy a formal EEO complaint to allege

21  discrimination based on race (African American), color (black), disability (herniated discs), failure to

22  accommodate medical restrictions, and harassment during 1990-1998.  With its August 11, 2000

23  memorandum, the Navy acknowledged its receipt of Mr. Davis' EEO complaint and "considered it a

24  'mixed case complaint' because the matter giving rise to the complaint, a removal action, is also

25  appealable to the Merit Systems Protection Board (MSPB)."   With its September 11, 2000

26  memorandum, the Navy dismissed Mr. Davis' EEO complaint on grounds that the complaint's events

27

28
    [2]     The Government does not identify Mr. Davis' position with the Navy, and his position is not apparent from
    the record.

2

1  "were not raised to an EEO Counselor's attention until 15 May 2000 well after 45 days of the occurrence

2  of these alleged events."

3        Mr. Davis appealed the Navy's decision to the U.S. Equal Employment Opportunity Commission

4  ("EEOC"), which reversed the Navy's decision and remanded Mr. Davis' EEO complaint for further

5  processing.  The EEOC determined that the Navy had "misidentified" Mr. Davis' complaint to allege

6  he was discriminated against when his supervisors failed to accommodate his medical restrictions and

7  continually harassed him during 1990-1998.  The EEOC further determined that Mr. Davis' EEO

8  complaint "clearly alleged that on April 14, 2000, he received a Letter of Termination stemming from

9  the harassment and the denial of a reasonable accommodation occurring since 1990."  The EEOC

10  concluded that Mr. Davis had contacted an EEO counselor regarding Mr. Davis' claims on May 15,

11  2000, "within the 45-day time limit under the regulations."

12        With its May 9, 2002 decision after remand, the Navy again dismissed Mr. Davis' EEO

13  complaint on grounds that his May 15, 2000 MSPB appeal preceded his August 10, 2000 EEO complaint

14  to render the MSPB appeal his sole unexhausted election to address his claims although he withdrew

15  the MSPB appeal.  With its October 28, 2002 decision, EEOC upheld the Navy's dismissal of Mr.

16  Davis' EEO complaint and found that Mr. Davis "was aware of his election rights" and "elected to

17  proceed with the MSPB and therefore cannot file an EEO complaint on the same matter."  EEOC issued

18  a January 22, 2003 denial of Mr. Davis' request to review the Navy's dismissal of his EEO complaint.

19  The January 22, 2003 denial included a section entitled "<u>COMPLAINANT'S RIGHT TO FILE CIVIL</u>

20  <u>ACTION</u>" to inform Mr. Davis that the EEOC decision "is final" and "there is no further right of

21  administrative appeal."  The January 22, 2003 notice further informed Mr. Davis of his "right to file a

22  civil action in an appropriate United States District Court **within ninety (90) calendar days** from the

23  date that you receive this decision."  (Bold in original.)

24                                  **EEOC's Second Denial**

25        The EEOC issued a (second) February 19, 2003 denial of request for reconsideration which

26  includes, as the Government characterizes, a mistaken notice to Mr. Davis of right to file a civil action

27  within 90 days.  With its March 10, 2003 letter to EEOC and served on Mr. Davis, the Navy explained

28  to EEOC that Mr. Davis' "complaint should be deemed administratively closed and the [Navy is] in full

3

1  compliance pursuant to an EEOC decision issued on 22 January 2003." The Navy further noted its belief

2  that the "19 February 2003 decision to be based on erroneous information." EEOC's March 21, 2003

3  letter informed Mr. Davis that the EEOC had "determined that the [Navy] has complied with this

4  decision."

5  **Mr. Davis' Claims**

6  On May 28, 2003, plaintiff filed his civil action to allege discrimination causes of action. The

7  complaint's first cause of action alleges discrimination since May 1990 on the basis of race, color, age

8  and disability under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e, et seq. The

9  complaint's second cause of action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§

10 12101, et seq., alleges failure to accommodate Mr. Davis' disability since March 1998. The complaint's

11 third cause of action  under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701, et

12 seq., alleges that since March 1998, Mr. Davis repeatedly requested the Navy to rehabilitate his

13 disability. The complaint's fourth cause of action alleges that since May 1990, plaintiff has suffered

14 from a hostile work environment created by the Navy. Mr. Davis seeks damages for pain and suffering,

15 including loss of his job, financial credit and health.

16 The Government seeks summary judgment on grounds that:

17     1.    Mr. Davis' claims are time barred in that he filed this action more than 90 days after

18            EEOC's original January 22, 2003 denial of Mr. Davis' request to review the Navy's

19            dismissal of his EEO complaint;

20     2.    Mr. Davis failed to exhaust requisite administrative remedies when he withdrew his

21            MSPB appeal;

22     3.    Mr. Davis may not recover compensatory damages for alleged discrimination prior to

23            November 21, 1991 or for age discrimination;

24     4.    The Federal Employee's Compensation Act ("FECA"), 5 U.S.C. §§ 8101, et seq., is an

25            exclusive remedy for some of Mr. Davis' claims; and

26     5.    Mr. Davis is unable to assert an ADA claim against the Government.

27 / / /

28 / / /

4

**DISCUSSION**

**Summary Judgment Standards**

F.R.Civ.P. 56(b) permits a party against whom a claim is asserted to seek "summary judgment in the party's favor upon all or any part thereof."  Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(e); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56(c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).  "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact."  *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574.  "As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."  *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.

1   "If, however, a moving party carries its burden of production, the nonmoving party must produce

2   evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d

3   at 574.  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material

4   fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see*

5   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry

6   of summary judgment, after adequate time for discovery and upon motion, against a party who fails to

7   make the showing sufficient to establish the existence of an element essential to that party's case, and

8   on which that party will bear the burden of proof at trial.  In such a situation, there can be no 'genuine

9   issue as to any material fact,' since a complete failure of proof concerning an essential element of the

10  nonmoving party's case necessarily renders all other facts immaterial.")

11         F.R.Civ.P. 56(e) requires a party opposing summary judgment to "set forth specific facts showing

12  that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if

13  appropriate, shall be entered against the adverse party."  "In the absence of specific facts, as opposed to

14  allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment

15  motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir.

16  1988).  When a summary judgment motion is unopposed, a court must "determine whether summary

17  judgment is appropriate – that is, whether the moving party has shown itself to be entitled to judgment

18  as a matter of law." *Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990).

19  A court "cannot base the entry of summary judgment on the mere fact that the motion is unopposed, but,

20  rather must consider the merits of the motion." *United States v. One Piece of Real Property, etc.*, 363

21  F.3d 1099, 1101 (11th Cir. 2004).  A court "need not sua sponte review all of the evidentiary materials

22  on file at the time the motion is granted, but must ensure that the motion itself is supported by

23  evidentiary materials." *One Piece of Real Property*, 363 F.3d at 1101.

24         As discussed below, the Government's summary judgment motion is well supported to entitle

25  the Government to summary judgment on Mr. Davis' claims.

26                              **90-Day Time Limit For Title VII Claims**

27         Title VII of the Civil Rights Act makes it "an unlawful employment practice for an employer .

28  . . to discharge any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race, color . . ." 42 U.S.C. § 2000e-2(a)(1). To be timely, a Title VII civil action based on race or color discrimination must be filed "[w]ithin 90 days of receipt of notice of final action taken . . . by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color . . ." 42 U.S.C. § 2000e-16(c). A court must not extend a waiver of sovereign immunity "beyond that which Congress intended" when addressing a statute of limitations and should not "assume the authority to narrow the waiver that Congress intended." *United States v. Kubrick*, 444 U.S. 111, 117-118, 100 S.Ct. 352, 357 (1979). "Although the procedural requirements of the [Civil Rights] Act are to be liberally construed in order to effectuate its purposes, a court lacks the power to extend, even by a few days, the statutory time limit for filing." *Copeland v. Brennan*, 414 F.Supp. 644, 646 (D. D.C. 1975); *see Archuleta v. Duffy's Inc.*, 471 F.2d 33 (10th Cir. 1973). "§ 2000e-16(c) is a condition to the waiver of sovereign immunity and thus must be strictly construed." *Irwin v. Dept. of Veteran Affairs*, 498 U.S. 89, 94, 111 S.Ct. 453, 456 (1990).

The Government characterizes EEOC's January 22, 2003 denial of Mr. Davis' request for review as a "final decision" to start the running of the 90 days to file his civil action. As noted by the Government, the January 22, 2003 denial noted that the EEOC's decision "is final" and informed Mr. Davis of his "right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision." (Bold in original.) The Government contends that based on the EEOC's January 22, 2003 denial, Mr. Davis' deadline to file a civil action expired on April 22, 2003 to render untimely his May 28, 2003 filing of this civil action. The Government characterizes EEOC's (second) February 19, 2003 denial of Mr. Davis's request for reconsideration as a mistake and notes that the Navy "identified the mistake and notified both Mr. Davis and the EEOC of the mistake on March 10, 2003."

The Government contends that equitable tolling does not apply to forgive untimely filing of Mr. Davis's civil action in that the Navy's March 10, 2003 notice of EEOC's mistaken February 19, 2003 denial provided Mr. Davis more than enough time to file his civil action prior to April 22, 2003.

In *Irwin*, 498 U.S. at 96, 111 S.Ct. At 457-458, the United States Supreme Court explained limits

7

1    to equitable tolling:

2       Federal courts have typically extended equitable relief only sparingly. We have allowed
        equitable tolling in situations where the claimant has actively pursued his judicial
3       remedies by filing a defective pleading during the statutory period, or where the
        complainant has been induced or tricked by his adversary's misconduct into allowing the
4       filing deadline to pass. We have generally been much less forgiving in receiving late
        filings where the claimant failed to exercise due diligence in preserving his legal rights.
5       Baldwin County Welcome Center v. Brown, 466 U.S. 147, 151, 104 S.Ct. 1723, 1725,
        80 L.Ed.2d 196 (1984).

6
                . . . But the principles of equitable tolling described above do not extend to what
7       is at best a garden variety claim of excusable neglect.

8          As noted by the Government, the 90-day limit to file a civil action expired on April 22, 2003

9    based on EEOC's January 22, 2003 denial of Mr. Davis' request for review.  The Navy informed Mr.

10   Davis that EEOC's (second) February 19, 2003 denial was in error.  Even if Mr. Davis relied on the

11   February 19, 2003 denial, the 90-day limit likely expired prior to the May 28, 2003 filing of Mr. Davis'

12   civil action, depending on his receipt of the February 19, 2003 denial.  Mr. Davis fails to challenge the

13   untimely filing of this Title VII claims.  Nothing appears to equitably toll the limitations period in the

14   absence of evidence that Mr. Davis timely filed even a defective pleading or was tricked into allowing

15   the filing deadline to pass.  The Navy took efforts to inform him Mr. Davis that EEOC's (second)

16   February 19, 2003 denial was erroneous.  The record reflects that Mr. Davis' first cause of action under

17   Title VII is timed barred.[3]

18                              **Withdrawal Of MSPB Appeal**

19          The Government argues that, assuming Mr. Davis timely filed his civil action, Mr. Davis failed

20   to exhaust his administrative remedies when he withdrew his MSPB appeal.

21          "Title VII specifically requires a federal employee to exhaust his administrative remedies as a

22   precondition to filing suit." *Vinieratos v. United States*, 939 F.2d 762, 768-769 (9th Cir. 1991) (citing

23   *Brown v. General Servs. Admin.*, 425 U.S. 820, 832, 96 S.Ct. 1961, 1965 (1976)); *see also Cooper v.*

24   *Bell*, 628 F.2d 1208, 1211 (9th Cir. 1980) (Title VII "contemplates the invocation of administrative

25   _____

26       [3]        The Government notes that a claim under the Age Discrimination in Employment Act of 1967 ("ADEA"),
     29 U.S.C. §§ 621-634, is barred based on Mr. Davis' failure to file his civil action within 90 days of EEOC's January 22,
27   2003 denial of Mr. Davis' request for review.  Mr. Davis' complaint alleges age discrimination under his first Title VII cause
     of action and does not allege a specific ADEA claim.  Nonetheless, an ADEA plaintiff must file a civil action within 90 days
28   of receipt of EEOC's right-to-sue letter.  29 U.S.C. §§ 626(c)(1), (d), (e), 633(b).  As such, any purported ADEA claim of
     Mr. Davis is time barred similar to his Title VII claims.

1   remedies as a condition precedent to litigation" by a federal employee). In *Vinieratos*, 939 F.2d at 768,

2   the Ninth Circuit explained that the Federal Labor-Management Relations Act ("FLMRA"), 5 U.S.C.

3   §§7101-7135, "governs the methods and manner by which a federal employee with exclusive union

4   representation may challenge an adverse personnel decision by the government agency that employs

5   him." Under the FLMRA, a federal employee who alleges employment discrimination must elect to

6   pursue his claim under "a statutory procedure or a union-assisted negotiated grievance procedure; he

7   cannot pursue both avenues, and his election is irrevocable." *Vinieratos*, 939 F.2d at 768; *see* 5 U.S.C.

8   § 7121(d). As to determination of an election, the Ninth Circuit in *Vinieratos*, 939 F.2d at 768, pointed

9   to 5 U.S.C. § 7121(d):

10      An employee shall be deemed to have exercised his option . . . to raise the matter under
11      either a statutory procedure or the negotiated procedure at such time as the employee
        timely initiates an action under the applicable statutory procedure or timely files a
12      grievance in writing, . . . whichever event occurs first.

13      The Government contends that Mr. Davis made his irrevocable election with his May 15, 2000

14   MSPB appeal of the Navy's decision to remove his employment and needed to exhaust the appeal prior

15   to filing his civil action. The Government continues that Mr. Davis abandoned his MSPB appeal to

16   result in failure to exhaust his administrative remedies to proceed, in turn, with his civil action.[4] The

17   Government cites to *McAdams v. Reno*, 64 F.3d 1137, 1142 (8th Cir. 1995), where the Eighth Circuit

18   Court of Appeals observed that once a federal employee proceeds before the MSPB, "she was required

19   to exhaust her claims in that forum before filing a civil action."

20      "[O]nce a party appeals to a statutory agency, board or commission, the appeal must be

21   'exhausted.' . . . Impatience with the agency does not justify immediate resort to the courts." *Rivera v.*

22   *United States Postal Service*, 830 F.2d 1037, 1039 (9th Cir. 1987), *cert. denied*, 486 U.S. 1009, 108 S.Ct.

23   1737 (1988).

24      Mr. Davis initially elected to proceed with an MSPB appeal of the Navy's decision to remove

25   his employment. With her June 20, 2000 decision, ALJ Anderson confirmed that Mr. Davis withdrew

26

27      [4]     The Government concedes that Mr. Davis need not exhaust an ADEA claim since such exhaustion is not
        required. Nonetheless, the Government contends that an ADEA claim of Mr. Davis fails because Mr. Davis did not timely
28   file this civil action to pursue such claim.

1   his MSPB appeal.  With his initial, irrevocable election of an MSPB appeal, Mr. Davis was obligated

2   to exhaust administrative remedies via such route.  He withdrew such appeal to render administratively

3   unexhausted claims based on his removal of his employment.  As such, Mr. Davis race, color and

4   disability discrimination claims under his (first) Title VII cause of action are barred as administratively

5   unexhausted.

6                      **Untimely, Unexhausted Claims During 1990-1998**

7          The Government contends that Mr. Davis is unable to pursue "claims that were not timely raised

8   during the administrative process."   More specifically, the Government argues that Mr. Davis'

9   discrimination and failure to accommodate claims arising from alleged conduct during 1990-1998 are

10   barred in the absence of EEO contact within 45 days of an incident, as required by 29 C.F.R. §

11   1614.105(a)(1).

12          29 C.F.R. § 1614.105(a)(1) requires an aggrieved person who believes he/she has been

13   discriminated against based on race, color, age or handicap to initiate, prior to filing a complaint, contact

14   with an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory" to "try

15   to informally resolve the matter."  Failure to comply with this regulation is "fatal to a federal employee's

16   discrimination claim."  *Cherosky v. Henderson*, 330 F.3d 1243, 1245 (9th Cir. 2003) (quoting *Lyons v.*

17   *England*, 307 F.3d 1092, 1105 (9th Cir. 2002)).

18          The Government concedes that Mr. Davis' discrimination claims arising from his separation

19   from service on April 14, 2000 were timely brought to the attention of his EEO counselor on May 15,

20   2000.  For purposes of this aspect of its summary judgment motion, the Government focuses on claims

21   for which Mr. Davis did not seek EEO counseling.  In the Government's words, if Mr. Davis challenges

22   "his removal from service (which is the only claim the EEOC ruled on) he is barred for failure to exhaust

23   his remedies" but if Mr. Davis "claims discrimination for specific acts that allegedly occurred between

24   1990 and 1998, these claims are barred because he failed to complain to an EEO counselor within 45

25   days of their occurrence."

26          The Government is correct.  Mr. Davis failed to administratively exhaust his claim for removal

27   from service.  Mr. Davis failed timely to seek EEO counseling for other claims within 45 days.  Mr.

28   Davis' failure to oppose summary judgment is a concession of as much.  As such, Mr. Davis'

1  discrimination and failure to accommodate claims arising during 1990-1998 are barred.

2  <u>**Compensatory Damages for Pre-1991 Discrimination And Age Discrimination**</u>

3  The Government contends that prior to November 21, 1991 amendments to the Civil Rights Act,

4  compensatory damages could not be recovered against the Government.  According to the Government,

5  compensatory damages are available only for Mr. Davis' "allegations regarding conduct that occurred

6  after November 21, 1991."

7  The 1991 amendments to the Civil Rights Act "expanded remedies for victims of intentional

8  discrimination," including compensatory damages. *Bishopp v. District of Columbia*, 57 F.3d 1088, 1092

9  n. 2 (D. C. Cir. 1995).  In addressing retroactive application of 1991 amendments to the Civil Rights Act,

10  the United States Supreme Court explained: "The Civil Rights Act of 1991 . . . creates a right to recover

11  compensatory and punitive damages for certain violations of Title VII of the Civil Rights Act of 1964."

12  *Landgraf v. USI Film Products*, 511 U.S. 244, 247, 114 S.Ct. 1483, 1488 (1994).  Before the 1991

13  amendments to the Civil Rights Act, "Title VII afforded only 'equitable remedies.'" *Landgraf*, 511 U.S.

14  at 252, 114 S.Ct. at 1490 (holding that 1991 amendments to Civil Rights Act could not be applied

15  retroactively to a Title VII case pending on appeal when amendments were enacted).

16  Turning to age discrimination, the ADEA "provides the exclusive judicial remedy for claims of

17  age discrimination" in federal employment.  *Paterson v. Weinberger*, 644 F.2d 521, 524 (5th Cir. 1981);

18  *Chennareddy v. Bowsher*, 935 F.2d 315, 318 (D.C. Cir. 1991).  As for age discrimination remedies, the

19  ADEA incorporates remedial provisions of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C.

20  § 216(b):

21  In any action brought to enforce this chapter the court shall have jurisdiction to grant
such legal or equitable relief as may be appropriate to effectuate the purposes of this
22  chapter, including without limitation judgments compelling employment, reinstatement
or promotion, or enforcing the liability for amounts deemed to be unpaid minimum
23  wages or unpaid overtime compensation under this section.

24  29 U.S.C. § 626(b).

25  FLSA remedies generally include backpay and benefits, reinstatement, liquidated damages for

26  willful employer action and attorney fees.  *See* 29 U.S.C. §§ 216(b), 626(b).

27  Based on the above authorities, the Government demonstrates that Mr. Davis is not entitled to

28  Title VII compensatory damages for alleged discrimination prior to November 21, 1991 and for age

1  discrimination.

2  **FECA Exclusive Remedy**

3        The Government notes that Mr. Davis has received $268,341.10 FECA benefits "for injuries

4  allegedly sustained on the job between 1990 and 1998." The Government argues that Mr. Davis has

5  been compensated for his back injury and "cannot seek more funds at this time." The Government

6  further argues that if Mr. Davis seeks emotional distress recovery based on discrimination, such damages

7  "must be offset by money already received under FECA."

8        FECA compensates federal employees for certain lost wages and medical costs that are incurred

9  as a result of "injury" sustained in performance of duties. *Nichols v. Frank*, 42 F.3d 503, 514 (9th Cir.

10  1994); *see* 5 U.S.C. § 8102. FECA defines "injury" as "in addition to injury by accident, a disease

11  proximately caused by employment, and damage to or destruction of medical braces, artificial limbs, and

12  other prosthetic devices . . ." 5 U.S.C. § 8101(5). FECA limits a federal employee's total compensation

13  for his work-related "injuries" to 75 percent of his monthly pay. *Nichols*, 42 F.3d at 514. Under FECA,

14  the Government's liability "with respect to the injury or death of an employee is *exclusive*." *Nichols*, 42

15  F.3d at 514 (citing 5 U.S.C. § 8116(c); italics in original).

16        In *Nichols*, 42 F.3d at 515, the Ninth Circuit addressed the interplay between FECA and Title

17  VII remedies:

18        Although FECA's exclusivity provisions prevent a court from awarding [plaintiff]
       additional payments for her work-related "injury" within the meaning of the act . . ., the
19       provisions do not prevent an award of additional payments for harms that fall *outside* of
       FECA's definition of "injury." Because the district court's award compensated
20       [plaintiff] solely for the harm she suffered from sex discrimination – which is not an
       "injury" within the meaning of FECA – the exclusivity provisions are not applicable . .
21       .

22        FECA's exclusivity provisions apply only to additional payments for work-
       related injuries. (Italics in original.)
23

24  The Ninth Circuit further to explained:

25        Under Title VII, victims of sex discrimination – regardless of whether that discrimination
       results in a work-related "injury" or not – are entitled to a maximum of 100% of their
26       back pay, as long as that sum does not lead to double recovery. Duplicative benefits
       must be deducted . . .
27
        . . . Because the exclusivity provisions of FECA are limited solely to other forms
28       of "compensation," they are simply not applicable to the types of "equitable" relief

12

1    authorized by Title VII.

2    *Nichols*, 42 F.3d at 515, 516 (italics in original).

3    As such, the plaintiff in *Nichols* was entitled to "the *difference* between her disability benefits and 100%

4    of the salary she would have received during her disability period." *Nichols*, 42 F.3d at 516 (italics in

5    original).

6    As to Mr. Davis' back injury, his FECA benefits have compensated him.   Since his

7    discrimination claims are barred and Mr. Davis does not oppose summary judgment, Mr. Davis is

8    limited to his FECA benefits.

9    **Employer Under The ADA**

10   The Government contends that Mr. Davis is unable to pursue his (second) ADA cause of action

11   against the Navy because "'employer' for ADA purposes, does not include the United States."   The

12   Government points to 42 U.S.C. § 12111(5)(B) which excludes "the United States" from the definition

13   of an employer subject to the ADA.  The Government correctly notes that the Navy is not subject to Mr.

14   Davis (second) ADA cause of action to bar it.

15   **CONCLUSION AND ORDER**

16   The Government has well supported its summary judgment motion and demonstrated that it is

17   entitled to judgment as a matter of law.  Review of the record reflects that in this action, Mr. Davis

18   alleges claims which he untimely pursued with this action, failed to exhaust administratively, or are

19   barred as a matter of law.  None of the claims in Mr. Davis' complaint survive summary judgment.  As

20   such, this Court:

21       1.      GRANTS the Government summary judgment;

22       2.      VACATES all pending dates, including the May 21, 2007 summary judgment hearing,

23               July 16, 2007 pretrial conference, and September 10, 2007 trial; and

24       3.      DIRECTS this court's clerk to close this action and to enter judgment in favor of

25               defendant Hansford T. Johnson, Acting Secretary of the Department of the Navy, and

26               against plaintiff Jerry Wayne Davis.

27       IT IS SO ORDERED.

28   **Dated:    May 14, 2007**                           **/s/ Lawrence J. O'Neill**

13

1                                    UNITED STATES DISTRICT JUDGE